UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
Thomas DeBernardo,

                Plaintiff,

                              **MEMORANDUM & ORDER**
-against-                              19-CV-04968 (DG) (ST)

Lowe's Home Centers,

                Defendant.
-------------------------------------------------------------X
DIANE GUJARATI, United States District Judge:

        On August 30, 2019, *pro se* Plaintiff Thomas DeBernardo commenced this action against Defendant Lowe's Home Centers ("Defendant" or "Lowe's"). *See generally* Complaint ("Compl."), ECF No. 1. Plaintiff appears to bring three claims in his Complaint: (1) age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA") and New York State Human Rights Law ("NYSHRL"); (2) retaliation under both the ADEA and NYSHRL; and (3) breach of contract alleging that Defendant violated a prior settlement agreement (the "Settlement Agreement") between the parties. *See* Compl. at 3-5.[1] On October 1, 2019, Defendant filed an answer and counterclaim, seeking damages and injunctive relief due to Plaintiff's alleged breach of the Settlement Agreement. *See* ECF No. 6. On December 6, 2019, Plaintiff filed an answer to Defendant's counterclaim. *See* ECF No. 13. On May 28, 2021, discovery closed. *See* ECF No. 36.

        Now before the Court is Defendant's Motion for Summary Judgment (the "Motion"), filed on August 27, 2021, seeking dismissal of all of Plaintiff's claims. *See* Defendant's Motion

---

[1] The Complaint could be read to include only retaliation and breach of contract claims. *See generally* Compl. Given Plaintiff's *pro se* status, the Court liberally construes the Complaint to also allege age discrimination, as does Defendant, *see* Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment at 1, ECF No. 38-4.

for Summary Judgment, ECF No. 38; Defendant's Statement of Material Facts in Support of Summary Judgment ("Def.'s 56.1"), ECF No. 38-2; Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment, ECF No. 38-4 ("Def.'s Br."); Defendant's Reply Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def.'s Reply"), ECF No. 40.[2]  Plaintiff opposes the Motion.  *See* Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Br."), ECF No. 39.[3]

## BACKGROUND

### I. Factual Background[4]

This case is the second litigation between Plaintiff and Defendant.  Def.'s 56.1 ¶ 1; *see also* Compl. at 6 ¶ 3.  Plaintiff worked for Lowe's at store #2233 (the "Store"), located in Stony Brook, New York, from 2013 to 2016.  Def.'s 56.1 ¶¶ 3-4; *see also* Compl. at 6 ¶ 2.  Lowe's terminated Plaintiff's employment in 2016.  Def.'s 56.1 ¶ 4; *see also* Compl. at 6 ¶ 2.  In 2017, Plaintiff filed suit ("*DeBernardo I*") against Lowe's in the Eastern District of New York, under

---

[2] Defendant's counterclaim against Plaintiff is not a subject of the instant motion.

[3] In compliance with Local Civil Rule 56.2, Defendant provided Plaintiff with a "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment."  *See* ECF No. 38-1.  Plaintiff responded to Defendant's Motion for Summary Judgment with a Response in Opposition to Defendant's Motion for Summary Judgment.  *See* ECF No. 39.  However, Plaintiff did not submit a 56.1 counterstatement, as required by Local Rule 56.1(b).  In light of Plaintiff's *pro se* status, the Court construes the factual statements in ECF No. 39 as Plaintiff's 56.1 statement. *See, e.g.*, *Schaffner v. Diamond Resorts Holdings, LLC*, No. 19-CV-05298, 2021 WL 2589860, at *2 n.3 (E.D.N.Y. June 24, 2021); *Melendez v. Haase*, No. 04-CV-00073, 2010 WL 5248627, at *1 (S.D.N.Y. Dec. 15, 2010), *aff'd sub nom. Melendez v. Greiner*, 477 F. App'x 801 (2d Cir. 2012); *Ige v. Command Sec. Corp.*, No. 99-CV-06916, 2002 WL 720944, at *1 n.2 (E.D.N.Y. Mar. 12, 2002).

[4] Unless otherwise indicated, the following facts are undisputed or described in the light most favorable to Plaintiff, the non-moving party.  Any citation to Defendant's Rule 56.1 Statement incorporates by reference the documents cited therein.

2

the ADEA and analogous New York state law, alleging that Lowe's unlawfully discharged Plaintiff on the basis of Plaintiff's age. Def.'s 56.1 ¶¶ 5-6; *see also* Compl. at 6 ¶ 3. Plaintiff and Lowe's reached a settlement in *DeBernardo I*, as set forth in the Settlement Agreement. Def.'s 56.1 ¶ 8; Compl. at 6 ¶ 4. The Settlement Agreement includes a "Non-disparagement and References" clause, which states that "Thomas DeBernardo agrees that he will not disparage Lowe's, or its officers, employees or directors" and that "Lowe's agrees that it will provide Mr. DeBernardo with a neutral reference consisting only of dates of employment and last position held." Def.'s 56.1 ¶¶ 10-11; Compl. Ex. B ¶ 12. The clause further provides that "Mr. DeBernardo agrees to direct all inquiries concerning his former employment to 'The Work Number,' which can be accessed as www.theworknumber.com or by calling 1-800-367-5690." ECF No. 38-3 (the Settlement Agreement) at 50;[5] Compl. Ex. B ¶ 12.

Following settlement of *DeBernardo I*, Plaintiff obtained employment as a Brand Manager at MarketSource, a purveyor of LG Electronics ("LG") products, where he began working in August 2018. Def.'s 56.1 ¶¶ 13-14; *see also* Compl. at 6 ¶ 6 (noting title as "Regional Brand Manager"). Plaintiff's job duties required him to visit home improvement retail stores in the Long Island area, including Lowe's, and centered on product and sales support of LG appliances. Def.'s 56.1 ¶¶ 14-15; *see also* Compl. at 6 ¶ 6. With respect to Lowe's' stores, Plaintiff's duties included, *inter alia*, ensuring that the LG Products were in good working order, that product stickers and marketing materials were correctly placed, and that LG items were properly displayed on Lowe's' store floor. Def.'s 56.1 ¶ 15. Plaintiff was also responsible for

---

[5] When citing to ECF No. 38-3, which contains numerous exhibits to Def.'s 56.1, the Court refers to the pagination generated by the Court's electronic case filing system ("ECF"), rather than to the exhibits' internal pagination. Likewise, when citing to Pl.'s Br., the Court refers to the pagination generated by ECF. All other citations are to the cited document's internal pagination.

3

answering questions from Lowe's employees and customers about LG products and informing Lowe's of upcoming promotions, products, events, and warrantees. Def.'s 56.1 ¶ 15. Although Plaintiff's duties brought him into Lowe's' stores, Lowe's had no authority over his employment. Def.'s 56.1 ¶ 16. MarketSource controlled the terms and conditions of Plaintiff's employment. Def.'s 56.1 ¶ 16. Lowe's did not set his hours or his pay, nor did Lowe's instruct Plaintiff on how he performed his work. Def.'s 56.1 ¶ 16. In no respect was Lowe's Plaintiff's employer. Def.'s 56.1 ¶ 16.

As part of his MarketSource job duties, Plaintiff visited several Lowe's locations on Long Island without incident. Def.'s 56.1 ¶ 17. On Sunday, September 16, 2018, as part of his MarketSource job duties, Plaintiff returned to the Lowe's store he formerly worked at while employed with Lowe's. Def.'s 56.1 ¶ 18. Plaintiff spoke with Lowe's employees about his prior lawsuit while at the store. Def.'s 56.1 ¶ 19. First, Plaintiff spoke with Sales Specialist Lisa Finelli for approximately twenty to thirty minutes. Def.'s 56.1 ¶¶ 19, 21. Plaintiff informed her that he had "settled" his first lawsuit with Lowe's and that he was planning on bringing a lawsuit against Assistant Store Manager Kenyona Chatman. Def.'s 56.1 ¶¶ 19, 21. Additionally, according to Defendant, Plaintiff claimed to Finelli that he knew of two former Lowe's employees who were planning on suing Lowe's. Def.'s 56.1 ¶ 21.[6] Finelli reported Plaintiff's comments to an Assistant Store Manager because she believed Plaintiff's conduct was unethical. Def.'s 56.1 ¶ 22. In addition to speaking with Finelli, Plaintiff also spoke to Sales Specialist Joe Graff and informed Graff that Plaintiff had "won" a lawsuit against Lowe's and that he was

---

[6] Plaintiff asserts that there is no evidence supporting this fact and states that he is "unaware of any former employees that have discussed suing Defendant or have actually sued them." *See* Pl.'s Br. at 3. Whether or not Plaintiff made this particular statement to Finelli is not material to the Court's analysis herein, and any dispute as to this fact is not a material dispute that would serve to preclude summary judgment.

going to bring a lawsuit against Chatman. Def.'s 56.1 ¶ 23. Plaintiff left the Store without further incident after completing his duties on Sunday, September 16, 2018. Def.'s 56.1 ¶ 24.

On Monday, September 17, 2018, the Store's manager, Monica Welter – who started in her Store Manager position in 2017, after Plaintiff had left Lowe's' employ – received a report from an Assistant Store Manager that Plaintiff had visited the store over the weekend in his capacity as an LG Products representative. Def.'s 56.1 ¶¶ 25-27. In that report, Welter was informed of the substance of Plaintiff's statements to Graff and Finelli. Def.'s 56.1 ¶ 27. Welter was concerned by these reports because it appeared that Plaintiff was distracting Lowe's employees from their duties by airing his grievances about Lowe's and disparaging a Lowe's manager. *See* ECF No. 38-3 (Affidavit of Monica Welter) at 91 ¶ 8; *see also* Def.'s 56.1 ¶ 28. Welter relayed the matter by email to Lowe's Market Products Service Manager Jim Milano, stating that "[o]ur new LG rep, Thomas DeBernardo, was terminated from our location and filed suit against us. He was in this past [Saturday][7] and is sharing this information with our team (as our rep). I do not feel his presence will do our store any good and I would request an[] alternative representative for our location." ECF No. 38-3 (Email Chain) at 101-02; *see also* Def.'s 56.1 ¶ 29. Milano forwarded Welter's email to other members of management to request assistance, and in the ensuing discussion among Lowe's managers, Milano stated that Plaintiff "was previously employed by us, then termed, and filed a lawsuit against. He is discussing this to anyone who will listen causing disruption on the salesfloor." Def.'s 56.1 ¶ 30 (emphasis omitted).

---

[7] Certain record evidence indicates that Plaintiff visited the Store on a Sunday rather than a Saturday. *See* Def.'s 56.1 ¶ 18. This discrepancy is not material to the Court's analysis herein.

5

Lowe's Deployment Planning Manager Kevin Lane forwarded the email chain in its entirety to LG Electronics' Regional Sales Manager Cherie Brooks. Def.'s 56.1 ¶ 31. In his email, Lane specifically requested Plaintiff's removal from the Store based on his "causing a disruption in the store." Def.'s 56.1 ¶ 31 (emphasis omitted). Brooks replied to Lane and other Lowe's managers at 8:09 a.m. on Thursday, September 20, informing all that LG Electronics would "have him removed from your location." Def.'s 56.1 ¶ 32. Brooks emailed Lowe's management again approximately twenty minutes later, stating that LG was "already working on removal process" and asking whether LG ought to be concerned about Plaintiff's termination from Lowe's. Def.'s 56.1 ¶ 33. Specifically, she asked: "In regards to termination, is this something our team should be informed about in regards to nature?" Def.'s 56.1 ¶ 33. Welter replied on Lowe's' behalf thirty minutes later, at 9:00 a.m., informing Brooks that Plaintiff's termination from Lowe's "was not something that would impact his employment with LG as a rep. Cherie [Brooks], if you'd like to call me I can discuss with you." Def.'s 56.1 ¶ 34 (emphasis omitted). Brooks never called Welter. Def.'s 56.1 ¶ 35.

Brooks understood that Plaintiff was employed by MarketSource. ECF No. 38-3 (Affidavit of Cherie Brooks) at 105 ¶ 5; *see also* Def.'s 56.1 ¶ 36. Accordingly, Brooks contacted MarketSource employee Robert Ellerbee and forwarded the information contained in the email chain with Lowe's managers. Def.'s 56.1 ¶ 36. Ellerbe forwarded the email chain to MarketSource Generalist Christine Philippe who, at 10:03 a.m. on September 20, 2018, noted: "Add in the comments tab that Thomas has been terminated due to end of assignment and is eligible for rehire." Def.'s 56.1 ¶ 37. The email chain between Lowe's management, subsequently forwarded to Brooks, and the emails from Lowe's management to-and-from

6

Brooks, constitute the only communications from Lowe's regarding Plaintiff's conduct and Lowe's' request for his removal from the Store.  Def.'s 56.1 ¶ 38.

MarketSource thereafter discharged Plaintiff from employment.  Def.'s 56.1 ¶ 39.  Specifically, Ellerbee instructed MarketSource Operations Manager Maria Meraz to terminate Plaintiff.  Def.'s 56.1 ¶ 39.  Meraz did not have any discussions with Lowe's managers or Lowe's employees regarding Plaintiff, let alone any directives from Lowe's to discharge Plaintiff.  Def.'s 56.1 ¶ 40.  Meraz and Philippe called Plaintiff at roughly 11:29 a.m. on September 20, 2018.  Def.'s 56.1 ¶ 42.  Meraz informed Plaintiff that MarketSource was discharging him from employment because he was not allowed to visit Lowe's locations.  Def.'s 56.1 ¶ 42; *see also* Compl. at 7 ¶ 16.

## II.     Procedural Background

Plaintiff filed the Complaint on August 30, 2019.  *See* ECF No. 1.  Defendant filed an answer and counterclaim on October 1, 2019.  *See* ECF No. 6.  Plaintiff filed an answer to Defendant's counterclaim on December 6, 2019.  *See* ECF No. 13.  Discovery closed on May 28, 2021.  *See* ECF No. 36.  On August 27, 2021, Defendant filed its Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking dismissal of all of Plaintiff's claims, which Plaintiff opposed.  *See* ECF Nos. 38-40.

## STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict

7

for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the [summary judgment] motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The moving party bears the initial burden of establishing the absence of any genuine issue of material fact. *See Liberty Lobby, Inc.*, 477 U.S. at 256; *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). If the moving party meets its initial burden, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Salahuddin*, 467 F.3d at 273; *accord Miller v. Nassau Health Care Corp.*, No. 09-CV-05128, 2012 WL 2847565, at *3 (E.D.N.Y. July 11, 2012). "Like the movant, the nonmovant cannot rest on allegations in the pleadings" but, rather, "must point to specific evidence in the record to carry its burden on summary judgment," *Salahuddin*, 467 F.3d at 273, offering "concrete evidence from which a reasonable juror could return a verdict in his favor," *Dister v. Cont'l Grp.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (quoting *Liberty Lobby, Inc.*, 477 U.S. at 256). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Bald assertions, completely unsupported by evidence, do not satisfy the opposing party's

burden. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *see also McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment.").

Rule 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002). "While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (quotation marks omitted).

In deciding a motion for summary judgment, a district court properly considers only evidence that would be admissible at trial. *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "In determining whether summary judgment is appropriate, [a district court] must resolve all ambiguities and draw all reasonable inferences against the moving party." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). A district court "is duty bound not to weigh evidence or assess the credibility of witnesses." *Smith v. DeGirolamo*, No. 17-CV-05532, 2020 WL 5752226, at *3 (E.D.N.Y. Sept. 25, 2020) (citing *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994)).

The same standards for summary judgment apply where, as here, the nonmovant is proceeding *pro se*. *Williams v. Savory*, 87 F. Supp. 3d 437, 451 (S.D.N.Y. 2015). However, "special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). Thus, even at the summary judgment stage, the submissions of a *pro se* litigant must be read "liberally and interpret[ed] . . . to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony*

9

*Recs.*, 351 F.3d 46, 50 (2d Cir. 2003) (quotation marks omitted).  Nevertheless, the "application of this different standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment."  *Id.* (quotation marks omitted).

## DISCUSSION

For the reasons set forth below, Defendant is entitled to summary judgment on all of Plaintiff's claims.[8]

## I.   Age Discrimination and Retaliation Claims

As set forth above, the Court liberally construes Plaintiff's Complaint as asserting claims for age discrimination and retaliation under both the ADEA and NYSHRL.  For the reasons that follow, Defendant is entitled to summary judgment on Plaintiff's age discrimination and retaliation claims.

### a.  Applicable Law

The existence of an employer-employee relationship is an essential element of claims under both the ADEA and NYSHRL.  *See Hopkins v. Language Testing Int'l*, No. 17-CV-03028, 2017 WL 6628580, at *2 (S.D.N.Y. Aug. 22, 2017) (explaining that claims under the ADEA and certain analogous anti-discrimination statutes "[are] premised on the existence of an employer-

---

[8] Plaintiff argues in his opposition brief, *inter alia*, that summary judgment should be deferred or denied under Federal Rule of Civil Procedure 56(d) because there are essential facts that are unavailable to him – *to wit*, certain statements of Finelli.  *See* Pl.'s Br. at 2-3 (arguing that certain statements of Finelli obtained by Plaintiff contradict statements of Finelli contained in ECF No. 38-3 (Affidavit of Lisa Finelli) at 79-81 but are unavailable to Plaintiff because they are "inadmissible").  Subsequent to the filing of Plaintiff's opposition brief, Defendant submitted an additional affidavit of Finelli, attaching the statements at issue.  *See* Def.'s Reply at 3-6; Reply Affidavit, ECF No. 40-1.  Defendant argues that the statements at issue do not serve to create any material issue of fact.  *See* Def.'s Reply at 3-6.  The Court agrees.  None of the statements that Plaintiff seeks to have the Court consider alters the Court's analysis or conclusions herein.  Accordingly, the Court declines Plaintiff's request that Defendant's motion for summary judgment be deferred or denied under Rule 56(d).

employee relationship" (citing *Gulino v. N.Y. State Educ. Dep't.*, 460 F.3d 361, 370 (2d Cir. 2006); *Lauria v. Nextel of N.Y., Inc.*, 438 F. Supp. 2d 131, 140 (E.D.N.Y. 2006); and *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 509 (2d Cir. 1994)); *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 80-81 (S.D.N.Y. 2020) ("An essential element of a claim under the NYSHRL . . . is the existence of an 'employer-employee relationship.'" (quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014))); *see also Ruiz v. New Avon LLC*, No. 18-CV-09033, 2019 WL 4601847, at *12 (S.D.N.Y. Sept. 22, 2019) ("To plead a claim under the NYSHRL . . . a plaintiff must allege an employment relationship between plaintiff and defendant."). More specifically, liability under the ADEA or NYSHRL requires "an employer-employee relationship at the time of the alleged unlawful conduct." *See Gilani v. Hewlett-Packard Co.*, No. 15-CV-05609, 2018 WL 4374002, at *4 (S.D.N.Y. Sept. 12, 2012) (discussing ADEA claims); *Williams v. PMA Cos., Inc.*, 419 F. Supp. 3d 471, 489 (N.D.N.Y. 2019) (discussing ADEA and NYSHRL claims); *Nelson v. Argyropoulous*, No. 18-CV-11413, 2020 WL 1244295, at *2 (S.D.N.Y. Mar. 16, 2020) (discussing ADEA and NYSHRL claims); *Liotard v. Fedex Corp.*, No. 14-CV-02083, 2016 WL 1071034, at *4 (S.D.N.Y. Mar. 17, 2016) (discussing ADEA claims).

### b. Defendant is Entitled to Summary Judgment on Plaintiff's Age Discrimination and Retaliation Claims

Plaintiff does not contend – nor is there record evidence before the Court indicating – that Defendant was Plaintiff's employer at the time of Defendant's alleged unlawful conduct. Indeed, it is undisputed that MarketSource – not Lowe's – was Plaintiff's employer at the time of the alleged unlawful conduct. *See* Def.'s 56.1 ¶¶ 13-18; Compl. at 4, 6-8; *see also* ECF No. 13 (Plaintiff's Response as to Defendant's Counterclaim) at 2 ¶ 6 (admitting that "Plaintiff appeared at Lowe's Stony Brook working as an employee of a Lowe's Vendor [LG via Market Source]"

11

(alteration in original)); ECF No. 38-3 (Deposition of Plaintiff) at 77 (Plaintiff answering "Correct" when asked: "Market Source is your employer, correct, not Lowe's, correct?").[9] Thus, the only conclusion permitted by the record before the Court is that Defendant and Plaintiff did not share an employer-employee relationship at the time of Defendant's alleged conduct. There is no genuine dispute of material fact as to this issue. As a result, Lowe's cannot be held liable under either the ADEA or NYSHRL for the conduct Plaintiff alleges in the instant action. *See Gilani*, 2018 WL 4374002, at *4; *Williams*, 419 F. Supp. 3d at 489; *Nelson*, 2020 WL 1244295, at *2; *Liotard*, 2016 WL 1071034, at *4.

Accordingly, Defendant's motion for summary judgment is granted as to Plaintiff's age discrimination and retaliation claims.[10]

## II. Breach of Contract Claim

For the reasons that follow, Defendant is entitled to summary judgment on Plaintiff's breach of contract claim.

### a. Applicable Law

Under New York law,[11] it is "well established that settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Collins v.*

---

[9] Plaintiff does not allege or argue – nor would the record before the Court permit the conclusion – that Defendant qualifies as an "employer" under either the "single employer doctrine" or the "joint employer doctrine." *See Gilani*, 2018 WL 4374002, at 4-5 (citing *Shiflett v. Scores Holding Co., Inc.*, 601 F. App'x 28, 30 (2d Cir. 2015)).

[10] Because the Court concludes that Defendant is entitled to summary judgment on Plaintiff's age discrimination and retaliation claims on the basis that there is no record evidence indicating the existence of an employer-employee relationship, the Court need not – and does not – reach Defendant's additional arguments in support of granting summary judgment on Plaintiff's age discrimination and retaliation claims. *See* Def.'s Br. at 11-23 (arguing that such claims fail under the *McDonnell Douglas* framework, for a variety of reasons).

[11] The Settlement Agreement provides that New York law shall govern. *See* Compl. Ex. B ¶ 17; *see also* Def.'s Br. at 23 (applying New York law).

*Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002) (alteration accepted) (quotation marks omitted). "Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Queens Ballpark Co., LLC v. Vysk Commc'ns*, 226 F. Supp. 3d 254, 258 (S.D.N.Y. 2016) (quoting *Fischer & Mandell, LLP v. Citibank N.A.*, 632 F.3d 793, 799 (2d Cir. 2011)). When a contract is "unambiguous on its face, it must be enforced according to the plain meaning of its terms." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (citing *South Rd. Assocs., LLC v. IBM*, 826 N.E.2d 806, 809 (2005)). "A court will grant summary judgment on a breach of contract claim in instances in which the contract's words, in and of themselves, convey a definite and precise meaning absent any ambiguity." *Breathe LLC v. White Fox Ventures, Inc.*, 268 F. Supp. 3d 510, 513 (S.D.N.Y. 2017) (quotation marks omitted).

### b. Defendant is Entitled to Summary Judgment on Plaintiff's Breach of Contract Claim

Plaintiff rests his breach of contract claim on his theory that Defendant violated Clause 12 of the Settlement Agreement. *See* Compl. at 4, 8. Specifically, Plaintiff alleges:

> In the initial settlement with Lowe's regarding age discrimination, the agreement included a non-disparagement clause, which stated that Lowe's would provide a neutral reference consisting only of dates of employment and last position held. This agreement was broken when a Lowe's employee contacted Market Source and stated I was not allowed in any Lowe's store on Long Island because I had a lawsuit with Lowe's.

Compl. at 4.

> Under [the Settlement] Agreement, defendant was obligated not to disparage plaintiff . . . . The defendant failed to comply with the [Settlement] Agreement by informing plaintiff's current employer that plaintiff had brought a discrimination lawsuit against Lowe's.

Compl. at 8.

Clause 12 of the Settlement Agreement, entitled "Non-disparagement and References," contains two distinct provisions. First, it contains a unilateral non-disparagement provision in

13

Defendant's favor: "Thomas DeBernardo agrees that he will not disparage Lowe's, or its officers, employees or directors." Def.'s 56.1 ¶ 10; Compl. Ex. B ¶ 12. Second, it contains a references provision: "Lowe's agrees that it will provide Mr. DeBernardo with a neutral reference consisting only of dates of employment and last position held." Def.'s 56.1 ¶ 11; Compl. Ex. B ¶ 12.[12]

Neither provision of Clause 12 provides a basis for Plaintiff's breach of contract claim. By its plain, unambiguous terms, Clause 12 does not contain a non-disparagement provision in *Plaintiff's* favor. Neither the provision setting forth that Plaintiff will not disparage Lowe's nor the provision setting forth that Lowe's will provide Plaintiff with a neutral reference can fairly be read to place a contractual obligation on Lowe's to refrain from disparaging Plaintiff in the way that Plaintiff claims Lowe's disparaged him (*i.e.*, by requesting of his employer that he be removed from the Store and by telling his employer that he had brought a discrimination lawsuit against Lowe's).

The Settlement Agreement's references provision is not implicated here because the statements of Lowe's at issue were not made in connection with Plaintiff seeking or securing employment. Indeed, it is undisputed that at the time those statements were made, Plaintiff already was employed by MarketSource. *See* Def.'s 56.1 ¶¶ 13, 18; ECF No. 38-3 (Deposition of Plaintiff) at 77; *see, e.g.*, *DMY Sponsor, LLC v. Carter Glatt and Captains Neck Holdings, LLC*, No. 653903/2020, 2020 WL 6715006, at *2-3 (N.Y. Sup. Ct. Nov. 16, 2020) (in a case rejecting an attempt by a party "to infer a non-disparagement component" to a reference

---

[12] The references provision goes on to provide that "Mr. DeBernardo agrees to direct all inquiries concerning his former employment to 'The Work Number,' which can be accessed as www.theworknumber.com or by calling 1-800-367-5690." ECF No. 38-3 (the Settlement Agreement) at 50; Compl. Ex. B ¶ 12.

provision, noting that "[t]he scope of [the reference] provision is limited; a plain reading of it suggests that it applies only to questions from a prospective employer. After all, that is the purpose of reference."); *Castro v. City of New York*, No. 05-CV-00593, 2009 WL 2223037, at *14 n.7 (S.D.N.Y. July 22, 2009) ("The settlement agreement provided for a neutral letter of reference, plainly a requirement applicable to inquiries for employment . . . ."); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Oliver*, 681 F. App'x 64, 66 (2d Cir. 2017) (interpreting a neutral reference clause to apply to inquiries from "potential employers"); *see also Reference, Webster's Third New International Dictionary* (2002) (defining "reference" as "a written statement of the qualifications of a person seeking employment or appointment given by his previous employer or by someone familiar with his character, ability, experience, or training"). And, the Settlement Agreement's non-disparagement provision is not implicated here because, by its express terms, it is limited to an agreement by *Plaintiff* not to disparage Lowe's, or its officers, employees or directors. *See, e.g.*, *Wiles v. Logan Staffing Sols., Inc.*, No. 18-CV-09953, 2020 WL 996735, at *2 (S.D.N.Y. Mar. 2, 2020) (discussing unilateral non-disparagement clause); *Weng v. T&W Rest., Inc.*, No. 15-CV-08167, 2016 WL 3566849, at *4 (S.D.N.Y. June 22, 2016) (same); *cf. Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 524-26 & n.5 (2d Cir. 2018).

  The Complaint urges a reading of the provisions contained in Clause 12 that is not supported by the language of the provisions themselves. *See, e.g.*, Compl. at 4 (suggesting that the neutral references provision operates as a non-disparagement provision in Plaintiff's favor). Plaintiff's alternative reading of Clause 12 is unsupported by the record and does not serve to defeat summary judgment.

  There is no record evidence demonstrating that Lowe's violated Clause 12 or any other provision of the Settlement Agreement, and there is no genuine dispute of material fact as to this

15

issue. Accordingly, Defendant's motion for summary judgment is granted as to Plaintiff's breach of contract claim.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment, ECF No. 38, is GRANTED in its entirety and all claims in the Complaint, ECF No. 1, are dismissed.

The Clerk of Court is directed to mail a copy of this Order to Plaintiff.

SO ORDERED.

                                                 */s/ Diane Gujarati*
                                                 DIANE GUJARATI
                                                 United States District Judge

Dated: February 8, 2022
       Brooklyn, New York